IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| SALT LIFE HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) |
| KEE-TAH ENTERTAINMENT, LLC | ) 3:13-CV-490-J-25 JRK |
| and ROLAND P. MOLINERE, Jr. a/k/a | ) |
| R. J. MOLINERE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff Salt Life Holdings, LLC ("Plaintiff" or "Salt Life"), by and through its undersigned counsel, brings this complaint against Defendants Kee-tah Entertainment, LLC and Roland P. Molinere, Jr. a/k/a R.J. Molinere (collectively, the "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1.     This is an action for Defendants' infringement of Salt Life's federally registered marks in violation of § 32(a) of the Lanham Act, 15 U.S.C. § 1114(1); for Defendants' federal unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); for Defendants' federal dilution of Salt Life's marks in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); for Defendants' common law infringement; for Defendants' common law unfair competition; for Defendants' dilution of the marks of Salt Life in violation of Fla. Stat. § 495.151; and for Defendants' violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201.

Accordingly, Salt Life seeks, among other relief, a permanent injunction to prevent Defendants from continuing to use Salt Life's marks and from otherwise competing unfairly with Salt Life; actual damages for Defendants' infringing conduct; treble damages for Defendants' willful misconduct; and the reasonable attorney's fees and costs incurred in prosecuting this action.

## THE PARTIES

2.     Plaintiff Salt Life is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business located at 13051 Beach Blvd., Suite 300, Jacksonville, Florida 32246.

3.     Upon information and belief, Defendant Kee-tah Entertainment, LLC ("Kee-tah") is a limited liability company organized and existing under Louisiana law, with a principal place of business at 156 Matherne St., Bourg, Louisiana 70343. Upon information and belief, Kee-tah can be served with process through service upon its registered agent Roland Paul Molinere, Jr. at the same address.

4.     Upon information and belief, Defendant Roland Paul Molinere, Jr. a/k/a R.J. Molinere ("R.J. Molinere") is the sole member and owner of Kee-tah. Upon further information and belief, R.J. Molinere is an individual who resides and/or does business at 156 Matherne St., Bourg, Louisiana 70343, and can be personally served with process at the same address.

5.     Upon information and belief, in his capacity as sole member and owner of Kee-tah, R.J. Molinere has directed the activities of Kee-tah and has personally participated in and has caused Kee-tah to engage in the acts complained of herein.

2

6.     Upon further information and belief, R.J. Molinere has gained a financial benefit from his participation in the acts complained of herein.

**JURISDICTION AND VENUE**

7.     This Court has jurisdiction over the subject matter of this action pursuant to the provisions of 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331(a), 1338, and 1367.

8.     This Court has personal jurisdiction over Defendants because each Defendant has committed a tortious act within this District.   In particular, upon information and belief, Defendants have marketed and sold infringing products to customers in this District, including customers in Plant City and Lake City, Florida.

9.     This Court also has personal jurisdiction over Kee-tah because Kee-tah has caused injury to Plaintiff Salt Life within this State arising out of an act by Kee-tah outside this State, and at the time of Salt Life's injury, Kee-tah was engaged in solicitation or service activities within this State and/or products processed, serviced or manufactured by Kee-tah were used or consumed within this State in the ordinary course of commerce, trade, or use.

10.     In particular, upon information and belief, Kee-tah is marketing and selling infringing products to customers in this State and throughout the country and is causing harm to Salt Life in this State.

11.     A substantial part of the unlawful acts and violations hereinafter described have occurred and are occurring within the Middle District of Florida, and the interstate trade and commerce hereinafter described is affected, in part, within the Middle District

3

of Florida.  Therefore, venue is appropriate in this Court pursuant to the provisions of 28 U.S.C. § 1391.

<h3 align="center">FACTS COMMON TO ALL COUNTS</h3>

12.    Salt Life is the owner of the mark SALT LIFE for a wide variety of consumer goods, including, but not limited to stickers, caps, shirts, T-shirts, surf wear, jewelry, all-purpose carrying bags, backpacks, beach bags, insulating sleeve holders for beverage cans and bottles, beach chairs, banners and flags of textile, beach towels, towels, sunglasses, eyewear, chains, cords and cases for sunglasses and eyeglasses, shoes, fishing equipment, luggage, license plates, auto roof racks, phone accessories, umbrellas, pet accessories, glassware, housewares, and skincare products (the "SALT LIFE Products").

13.    Salt Life is also the owner of a distinctive design form of its SALT LIFE mark shown below:



and uses its SALT LIFE (Design) mark for all of the SALT LIFE Products.

14.    Salt Life is also the owner of the mark SALT LIFE (Design) and the mark SALT LIFE FOOD SHACK & Design for bar and restaurant services, social media services, online retail store services, and retail store services (the "SALT LIFE Services"). The SALT LIFE FOOD SHACK & Design mark is shown below:



15.     Salt Life is the owner of several registrations of its SALT LIFE (Design) and SALT LIFE FOOD SHACK & Design marks, including U.S. Registration Nos. 3,762,960; 3,763,170; 3,808,444; and 3,840,755 (the "Salt Life Registrations") maintained on the Principal Register of the U.S. Patent and Trademark Office. True and correct copies of Patent and Trademark Office Records for the Salt Life Registrations are attached as Exhibit A.

16.     Since at least as early as 2003, Salt Life has continuously used its SALT LIFE (Design) mark for stickers and apparel. True and correct copies of print-outs from the www.saltlife.com website showing Salt Life's use of its SALT LIFE (Design) marks for stickers and apparel are attached as Exhibit B. The rights supported by such use of the SALT LIFE and SALT LIFE (Design) mark and the goodwill associated therewith inure to the benefit of Salt Life.

17.     Since 2003, Salt Life has substantially expanded its use of the SALT LIFE (Design) mark and SALT LIFE FOOD SHACK & Design mark (collectively, the "SALT LIFE Marks") to include all of the Salt Life Products and the Salt Life Services. True and correct copies of print-outs from the www.saltlife.com and www.saltlifefoodshack.com websites showing use of the SALT LIFE Marks for many of the Salt Life Products and Services are attached as Exhibit C.

5

18.     In addition, Salt Life is continuing its efforts to expand its use of the SALT LIFE Marks to include numerous other types of goods, including, but not limited to, cosmetics, surfing equipment, hotel accommodation services, and health spa services (the "Salt Life Expansion Products").

19.     Since 2007, Salt Life and its licensees have spent more than one million dollars ($1,000,000.00) to advertise and promote throughout the United States the Salt Life Products and Services under the SALT LIFE Marks. As a result of such advertising and promotion of the Salt Life Products and Services under the SALT LIFE Marks, and as evidenced by the Salt Life Registrations, the SALT LIFE Marks have become well known and widely accepted and respected by the consuming public and in the trade. As a further result of such advertising, and as evidenced by the Salt Life Registrations, the SALT LIFE Marks have become distinctive, identifying products and services emanating only from Salt Life, and symbolize extremely valuable goodwill, all as evidenced by sales of the Salt Life Products and Services under the Salt Life Marks throughout the United States of more than thirty million dollars ($30,000,000.00) since 2007.

20.     As a result of Salt Life's promotional efforts, the SALT LIFE Marks and the distinctive font design used in the SALT LIFE (Design) and SALT LIFE FOOD SHACK & Design Mark have become hugely popular, particularly in the State of Florida, where Salt Life originated, and numerous third parties have attempted to capitalize on the fame of the SALT LIFE Marks.

21.     Salt Life actively polices the SALT LIFE Marks and seeks to insure that third parties are not infringing or diluting the Marks.

6

22.   The Internet is a significant advertising channel used by Salt Life to promote the SALT LIFE Marks, and its products are sold in 2250 retail locations throughout the United States.

23.   Upon information and belief, Defendant Kee-tah, with full knowledge of Salt Life's rights in the SALT LIFE Marks and under the direction and control of R.J. Molinere, has intentionally adopted, advertised, and used the distinctive font design from the SALT LIFE Marks in a "GATOR LIFE" mark (the "Infringing Mark"), shown below:



24.   As shown in the comparison below, Defendant Kee-tah, under the direction and control of R.J. Molinere, copied and misappropriated the distinctive font design from the SALT LIFE marks into Defendants' Infringing Mark:



25.   Upon information and belief, Defendant Kee-tah, under the direction and control of R.J. Molinere, has intentionally adopted, advertised, and used the Infringing

7

Mark on t-shirts, caps, and stickers (the "Infringing Goods") and in connection with the promotion and sale of the Infringing Goods. True and correct copies of printouts materials showing Defendants' use of the Infringing Mark on the Infringing Goods are attached as Exhibit D.

26.     Upon information and belief, Defendant Kee-tah, under the direction and control of R.J. Molinere, has adopted, advertised, and used the Infringing Mark on the Infringing Goods for the purpose of (i) trading on the goodwill and reputation of Salt Life; (ii) capitalizing on the hundreds of thousands of dollars spent by Salt Life in advertising and promoting the Salt Life Products and Services; and (iii) misleading the purchasing public into believing that Defendants and their Infringing Goods are legitimately connected with, sponsored by, or approved by Salt Life.

27.     Upon information and belief, Defendant Kee-tah, under the direction and control of R.J. Molinere, is advertising and promoting the Infringing Goods in a manner calculated to call to mind the SALT LIFE Marks and to create the false impression that Defendants' Infringing Goods are affiliated, connected, or associated with Salt Life and/or that they have the sponsorship or approval of Salt Life. The public is likely to be misled or deceived by the false impression arising from Defendants' use of the SALT LIFE Mark on the Infringing Goods.

28.     Defendant Kee-tah's advertising and promotion of the Infringing Goods, under the direction and control of R.J. Molinere, is likely to cause confusion, mistake, and deception as to the source and origin of the Infringing Goods.

29.     Upon information and belief, R.J. Molinere, with specific intent, has induced Defendant Kee-tah to promote and sell the Infringing Goods under the Infringing Mark.

30.     Upon information and belief, R.J. Molinere has personally participated in the marketing and sale of the Infringing Goods under the Infringing Mark.

31.     On November 27, 2012, Salt Life's counsel sent a letter to the attorney for Kee-tah, Clyde Vanel, demanding that Kee-tah cease and desist from all further use of the Infringing Mark. A true and correct copy of such letter is attached as Exhibit E. Mr. Vanel did not respond to such letter.

32.     On December 13, 2012, Salt Life's counsel contacted Mr. Vanel by telephone to follow up on the November 27 letter. Mr. Vanel stated during that conversation that he and his client were reviewing the matter and would send a response the following week. Neither Mr. Vanel nor his client made any attempt to contact Salt Life or its counsel following such conversation.

33.     On December 21, 2012, Salt Life's counsel sent an additional email requesting a response to the November 27 letter. A true and correct copy of such email is attached as Exhibit F. Neither Kee-tah nor its counsel ever responded to the email or letter from Salt Life's counsel.

34.     Since receiving Salt Life's letters in the Fall of 2012, Defendants have continued to promote and sell the Infringing Goods under the Infringing Mark in blatant disregard of Salt Life's trademark rights.

35.     As of the date of this Complaint, Defendants are continuing to use the Infringing Mark on the Infringing Goods and in the promotion and sale of the Infringing Goods.

36.     Defendants' continuing use of the Infringing Mark on the Infringing Goods demonstrates a willful and bad faith intent to create confusion, deception, and mistake in the minds of Defendants' customers and potential customers and to trade on Salt Life's goodwill by implying a connection or relationship between the Infringing Goods and the Salt Life Products and Services, as a result of which Defendants have been and will be unjustly enriched.

37.     Upon information and belief, with knowledge of Salt Life's rights in the SALT LIFE Marks and with specific intent, R.J. Molinere has personally participated in and continues to participate in the aforesaid infringing acts of Defendant Kee-tah, and R.J. Molinere directs, controls, ratifies, and is the moving force behind such acts.  As a result, R.J. Molinere is personally liable for such acts.

## COUNT I

## FEDERAL TRADEMARK INFRINGEMENT

38.     The allegations of Paragraphs 1 through 37 are incorporated by reference and realleged as if fully set forth herein.

39.     Defendants' aforesaid acts constitute trademark infringement in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

40.     The aforesaid acts of Defendants are greatly and irreparably damaging to Salt Life and will continue to be greatly and irreparably damaging to Salt Life unless

enjoined by this Court, as a result of which Salt Life is without an adequate remedy at law.

## COUNT II

## FEDERAL UNFAIR COMPETITION IN

## VIOLATION OF SECTION 43(a) OF THE LANHAM ACT

41.     The allegations of Paragraphs 1 through 40 are incorporated by reference and realleged as if fully set forth herein.

42.     Defendants' aforesaid acts tend to represent falsely that Defendants' Infringing Goods are legitimately connected with Salt Life; tend to describe falsely that the Infringing Goods emanate from or are sponsored or approved by Salt Life; and tend to designate falsely that the Infringing Goods originate from Salt Life, all of which constitute violations of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

43.     The aforesaid acts of Defendants are greatly and irreparably damaging to Salt Life and will continue to be greatly and irreparably damaging to Salt Life unless enjoined by this Court, as a result of which Salt Life is without an adequate remedy at law.

## COUNT III

## FEDERAL DILUTION OF PLAINTIFF'S MARKS IN

## VIOLATION OF SECTION 43(c) OF THE LANHAM ACT

44.     The allegations of Paragraphs 1 through 43 are incorporated by reference and realleged as if fully set forth herein.

45.     The SALT LIFE Marks are famous, and had become famous prior to the date when Defendants first adopted and began using the Infringing Mark.

46.     Defendants' aforesaid acts dilute the SALT LIFE Marks in that Defendants' adoption and use of the Infringing Mark on the Infringing Goods have caused and will continue to cause the diminution of the value of the goodwill represented by, and of the distinctiveness of, the SALT LIFE Marks, all in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

47.     The aforesaid acts of Defendants are greatly and irreparably damaging to Salt Life and will continue to be greatly and irreparably damaging to Salt Life unless enjoined by this Court, as a result of which, Salt Life is without an adequate remedy at law.

## COUNT IV

## COMMON LAW TRADEMARK INFRINGEMENT

48.     The allegations of Paragraphs 1 through 47 are incorporated by reference and realleged as if fully set forth herein.

49.     Defendants' aforesaid acts constitute common law trademark infringement.

50.     The aforesaid acts of Defendants are greatly and irreparably damaging to Salt Life and will continue to be greatly and irreparably damaging to Salt Life unless enjoined by this Court, as a result of which, Salt Life is without an adequate remedy at law.

## COUNT V

## COMMON LAW UNFAIR COMPETITION

51.     The allegations of Paragraphs 1 through 50 are incorporated by reference and realleged as if fully set forth herein.

52.     Defendants' aforesaid acts constitute unfair competition in that:

      (a)     Said acts enable and will continue to enable Defendants to obtain the benefit of and trade on the goodwill of Salt Life;

      (b)     Said acts damage and will continue to damage Salt Life's goodwill in that Salt Life does not have control over the business and goods and services of Defendants;

      (c)     Said acts have caused and are likely to continue to cause confusion, mistake or deception of the public; and

      (d)     Said acts will result in the unjust enrichment of Defendants.

53.     The aforesaid acts of Defendants are greatly and irreparably damaging to Salt Life and will continue to be greatly and irreparably damaging to Salt Life unless enjoined by this Court, as a result of which, Salt Life is without an adequate remedy at law.

## COUNT VI

## VIOLATION OF THE FLORIDA ANTI-DILUTION STATUTE

54.     The allegations of Paragraphs 1 through 53 are incorporated by reference and realleged as if fully set forth herein.

55.     Defendants' aforesaid acts dilute the SALT LIFE Marks in that Defendants' use of the Infringing Mark has caused and will continue to cause the diminution of the value of the goodwill represented by, and of the distinctiveness of, the SALT LIFE Marks, all in violation of Fla. Stat. § 495.151.

56.     The aforesaid acts of Defendants are greatly and irreparably damaging to Salt Life and will continue to be greatly and irreparably damaging to Salt Life unless enjoined by this Court, as a result of which, Salt Life is without an adequate remedy at law.

**COUNT VII**

**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

57.     The allegations of Paragraphs 1 through 56 are incorporated by reference and realleged as if fully set forth herein.

58.     Defendants' aforesaid acts constitute unfair and deceptive trade practices in violation of Fla. Stat. § 501.201 *et seq.*

59.     The aforesaid acts of Defendants are greatly and irreparably damaging to Salt Life and will continue to be greatly and irreparably damaging to Salt Life unless enjoined by this Court, as a result of which, Salt Life is without an adequate remedy at law.

WHEREFORE, Salt Life prays for the following relief:

(a)     That judgment on the Complaint be entered for Salt Life and against Defendants;

(b)     That Defendants, their affiliated entities, servants, agents, representatives, employees, and agents, and all other persons in active concert or participation with Defendants, and Defendants' heirs, successors and assigns be enjoined and restrained from:

    (1)     Using, in the advertisement, promotion, merchandising, distributing, offering for sale, and sale of t-shirts, caps, stickers, and/or any other goods or services, the Infringing Mark or any colorable imitation of such Mark;

    (2)     Expressly or impliedly representing themselves to customers, potential customers, or the public to be affiliated in any way with Salt Life in connection with the advertisement, promotion, merchandising, distributing, offering for sale, or sale of t-shirts, caps, stickers, and/or any other goods or services;

    (3)     Representing, by words or conduct, that any product or service provided, offered for sale, sold, advertised, or rendered by Defendants is authorized, sponsored or endorsed by or otherwise connected with Salt Life;

    (4)     Otherwise infringing the SALT LIFE Marks;

    (5)     Diluting the SALT LIFE Marks; and

    (6)     Competing unfairly with Salt Life in any manner;

(c)     That the Court find Defendants' acts of infringement, unfair competition, and dilution to be willful;

(d) That Salt Life receive from Defendants, jointly and severally, three times Salt Life's actual damages caused by the acts of Defendants, and Defendants' profits from any sales of the Infringing Goods under the Infringing Mark or any colorable imitation of such Mark;

(e) That this case be found to be exceptional and that Defendants be required to pay Salt Life exemplary and punitive damages, the costs of this action, together with reasonable attorneys' fees and disbursements;

(f) That Defendants be ordered to deliver up for destruction all inventory, labels, signs, prints, insignia, brochures, and any other written or recorded material or advertisements in its possession or control containing the Infringing Mark or any colorable imitation of such Mark;

(g) That Defendants be required, in accordance with 15 U.S.C. § 1115, to file with this Court and serve on Salt Life within thirty (30) days from the date of entry of any injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the terms of the injunction; and

(h) That Salt Life be awarded all damages, cost, attorneys' fees and such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to FRCP 38(b), Plaintiff demands a trial by jury of all issues triable of right by a jury.

16

This _3ʳᵈ_ day of May, 2013.

Respectfully submitted,

SMITH, GAMBRELL & RUSSELL, LLP

Scott S. Gallagher
Florida Bar No. 371970
sgallagher@sgrlaw.com
Bank of America Tower
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
(904) 598-6111
Fax: (904) 598-6211

Counsel for Plaintiff Salt Life Holdings, LLC

Of Counsel:

Elizabeth G. Borland
Georgia Bar No. 460313
egborland@sgrlaw.com
SMITH, GAMBRELL & RUSSELL, LLP
Suite 3100, Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309-3592
(404) 815-3500
Fax: (404) 815-3509

17